APPEAL OF MORRIS GUMPEL, EXECUTOR, ESTATE OF JULIUS GUMPEL, DECEASED.

Docket No. 2590. Submitted May 9, 1925. Decided October 30, 1925.

The value of the interest of a deceased partner in the good will of a partnership transferred to take effect in possession or enjoyment at or after his death, *held* to have been properly included as a part of the gross estate.

*Frederick W. Sperling*, Esq., for the taxpayer.
*L. C. Mitchell*, Esq., for the Commissioner.

Before MARQUETTE.

This appeal is from the determination of a deficiency in estate tax in the amount of $469.79.

The single question is whether the estate is taxable upon the value of good will in a partnership consisting of the decedent and his son, under the facts set forth in our findings.

The appeal was submitted upon the pleadings and documentary exhibits offered by the Commissioner.

FINDINGS OF FACT.

For some years prior to December, 1920, the decedent, Julius Gumpel, father, and Morris Gumpel, son, were engaged as partners in the retail clothing business in New York City, with stores at three

different locations. The business was done under the name of J. Gumpel & Son. Morris Gumpel also did business at four other retail stores in New York City under the same name, J. Gumpel & Son, which name he had owned, and the use of which he had enjoyed for 15 years prior to 1921. At each of the latter four locations Morris Gumpel had partners other than the decedent.

Under date of December 4, 1920, Julius Gumpel and Morris Gumpel executed a partnership agreement, of which the following is a material part:

VI. It is further agreed that upon the death of either of the parties hereto during the continuance of this agreement or during the continuation of the [sic] as hereinafter provided that the said copartnership business shall be wound up and the interest of the deceased partner ascertained and paid to his legal representations [sic] in the following manner: An inventory shall be taken of all the stock of goods on hand or on order belonging to the said copartnership business and the net cost thereof ascertained and for the purpose of determining the interest of the deceased partner, the merchandise ascertained as aforesaid, shall be valued at seventy-five per cent (75%) of the net cost and the interest of the deceased partner shall be one-half of the net cost computed as herein provided. In addition to the amount of money that may be found due to said deceased partner for the merchandise, there shall also be ascertained the amount credited to the account of said deceased partner as and for his share of the profits on the books of the copartnership and such amount together with the value of the merchandise determined as herein provided shall constitute the one-half interest of the deceased partner and shall be paid to the legal representatives of the said deceased partner as hereinafter provided. In computing the interest of the said deceased partner, no other items shall be taken into consideration except those specified in this paragraph and no payment be made for the good will of the said business the right to use of the name of J. Gumpel and Son, the leases or the fixtures of said businesses all of which are hereby constituted the sole property of the surviving partner be kept and retained by him and as and for his sole property and for his own use and benefit. The amount of the interest of the deceased partner ascertained and computed as in this paragraph provided shall be paid by the surviving partner to the representatives of the deceased partner in eight (8) quarterly payments extending over a period of two (2) years commencing thirty (30) days from the death of either of the parties. The share of the decedent shall bear interest at the rate of six per cent per annum commencing thirty (30) days after the death of said party.

At the time of executing said agreement the father was over 70 years old and the son over 50.

In a codicil to his last will and testament, dated January 11, 1921, the decedent made a bequest of his interest in the good will of the business to his son Morris.

The father died on April 27, 1921.

The Commissioner determined a valuation for the good will of the business, in which the father had an interest as a partner, at $50,000, and included within the gross estate of the decedent $25,000, as the value of the decedent's interest in the good will.

In the Federal estate tax return, filed by the son as executor, the interest of the decedent in the partnership J. Gumpel & Son was reported as having a value on the date of death of $42,875.79, with the following notation:

No allowance is made for good will because by agreement between the partners based on good and valuable considerations, the good will belongs to the surviving partner to whom full title thereto passes on death without further consideration.

No evidence was submitted proving such " good and valuable considerations."

The Commissioner determined a deficiency in tax in the amount of $469.79.  The taxpayer duly appealed.

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

MARQUETTE: Under the statutes of New York, Laws 1919, chapter 408, the death of any partner causes a dissolution of the partnership; the partnership is not then terminated, but continued until the winding up of the partnership affairs is completed. With knowledge of New York law, the contract of December 4, 1920, must have been made. That contract provided:

Upon the death of either  * * *  the said copartnership business shall be wound up and the interest of the deceased partner ascertained and paid to his legal representations [sic] in the following manner.

What followed the foregoing in the contract was entirely a statement of agreement as to how the deceased partner's interest would be valued and paid for in the winding-up process. That agreement was a limitation on the otherwise rights of the estate of the deceased partner against the surviving partner under section 69 of the New York Partnership Law.

That it was understood by the parties to be an agreement as to the value of the deceased partner's interest and not a transfer of property, is apparent from the fact that Julius Gumpel executed a codicil to his will, a month after the date of the contract, and by that codicil purported to bequeath the good will to his son, Morris.

But the good will of a business can not be transferred apart from the assets of the business, and the surviving partner would have the right to continue to do business under the partnership name. He would only have to account to the estate of the deceased partner for the latter's interest in the partnership assets. That such accounting would be limited by terms of the partnership agreement does not affect the value of the deceased partner's interest for pur-

poses of determining the tax upon the transfer under the Revenue Act of 1918. It is " the interest which ceased by reason of the death " that is the subject of the tax. *Knowlton* v. *Moore*, 178 U. S. 41; *Y. M. C. A. of Columbus, Ohio*, v. *Davis*, 264 U. S. 47; *Edwards* v. *Slocum*, 264 U. S. 61. That interest, as a thing of value, was not affected by the contract, and whether it is deemed to have passed by the contract or by the will, we think in either event it was a transfer to take effect in possession or enjoyment at or after death and was properly included in the gross estate. The Commissioner's determination of the value was correct. *Appeal of Nigel Leslie Campbell*, 1 B. T. A. 441; *In re Orvis' Estate*, 223 N. Y. 1; 119 N. E. 88; *In re Cory's Estate*, 164 N. Y. S. 956; *In re Dupignac's Estate*, 123 Misc. (N. Y.) 21; 204 N. Y. S. 273.

The taxpayer has stressed the contention that the good will had little value because the son, Morris, already enjoyed the right to use the name J. Gumpel & Son and, for many years, had used it at four other locations. But good will is not confined to a name; it may, as well, be attached to a particular location where the business is transacted, or to a list of customers, or to other elements of value in the business as a going concern. See *Metropolitan Bank* v. *St. Louis Dispatch Co.*, 149 U. S. 436, 446.