Campbell, Chief Justice,
delivered the opinion of the court:
Recovery is sought by this suit of an additional tax assessed by the Commissioner of Internal Revenue and paid under protest by the executors of the last will and testament of Augustus D. Juilliard, deceased. The testator left an estate which the executors returned for taxation at a net valuation of over five millions of dollars after deducting from the gross valuation the amount of the residuary estate bequeathed to a charitable purpose with which we have to deal and the taxes due upon this net value were paid. The commissioner made an additional assessment amounting to approximately $101,000, which the executors were required to pay.
The testator, after making certain specific bequests not material here, bequeathed to the executors and trustees named in the will the residue of the estate “ in trust ” for certain charitable purposes, directing them to cause to be formed a corporation under the general laws or a special act of the Legislature of New York, with authority to administer the trust for the charitable purposes set forth in the will. It contemplated the formation of the corporation “ without any appreciable delay,” but directed that during the interim between the death of the testator and the organization of the corporation the income received from the trust fund should be paid to the testator’s nephew, and that upon its organization the corporation should receive the estate, and all interest of the nephew in any of the income should cease.
The testator died on the 25th day of April, 1919, and the Juilliard Musical Foundation was incorporated by special act of the Legislature of New York March 30, 1920, less than a year after the testator’s death. The additional assessment was not made until April, 1924, or four years after the special act incorporating the foundation. The statute *838 under which the executors made their return and which the commissioner relied upon to sustain his additional assessment is the revenue act of 1918, 40 Stat. 1057, 1096, which, in section 401, imposes a tax equal to the sum of stated percentages of the value of the net estate (determined as provided in section 403) “ upon the transfer of the net estate ” of every decedent dying after the passage of the act. Section 402 prescribes the method for determining the gross estate. Section 403 provides that for the purpose of the tax the value of the net estate shall be determined by deducting from the value of the gross estate the amounts of certain expenses and other items stated and (3) the amount of all bequests “ to or for the use of any corporation organized and operated exclusively for charitable * * * purposes * * * or to a trustee or trustees exclusively for such * * * purposes,” and (4) a further exemption of $50,000.
The tax so imposed is not upon the several legacies or the residue of the estate but, in terms, is a tax “ upon the transfer of the net estate.” It is imposed upon the interest which ceases by reason of the death. See Edwards v. Slocum, 264 U. S. 61. “ What this law taxes is not the interest to which the legatees and devisees succeeded on death, but the interest which ceased by reason of the death.” (Mr. Chief Justice Taft in Y. M. C. A. v. Davis, 264 U. S. 47, 50.) And this' interest, being the taxable net estate, is to be determined by the prescribed statutory method. Edwards v. Slocum, supra. In making their return the executors deducted from the gross estate the amount of the corpus of the residuary estate as being a bequest to a charitable purpose, and in doing this they apparently followed literally the language of the act, whatever significance attaches to the word “ value ” in connection with the taxable interest or the word “ amount ” in connection with authorized deductions. This corpus was bequeathed to the executors and trustees “ in trust ” for the foundation they were directed to organize to administer it, and it Avas a bequest in frmsenti, which no doubt Avould have been enforceable by the beneficiary when it came into being, or at the end of the *839 .year allowed by the State statute for the payment of legacies. But the fact remains that the bequest of the corpus carried with it a bequest to the nephew of the income arising from it between the date of the death and the formation of the proposed corporation; and while the corpus was held in trust, as stated, the nephew acquired an interest which was not deductible from the gross estate, but did add something to the taxable value of the net estate. The commissioner, making an additional assessment, ■some four years after the executors had paid the tax on their return, decided that too great a deduction had been taken by them, and in arriving at his conclusion it is stated on the Government’s brief he “ determined that the amount of the gift to charity was less than the value of the residuary property, because the charity was deprived of the income from this property during the period prior to the formation of the corporation, and, consequently, he calculated that the value of the interest not devised to the charity was '$567,055.36, and allowed as a deduction only the difference between this sum and the value of the residue.” To reach this conclusion “ he found the value of the residue at the .date of the death of the testator and deducted therefrom interest at the rate of 4% per annum for the period from the ■date of the death of the testator, April 25, 1919, to the date nf the formation of the foundation, March 30, 1920, and ■allowed as a deduction from the gross estate of the decedent the present worth, so determined.” (See Finding IX.) When this action was taken the income that had accrued .and been paid to the nephew amounted to the sum of $220,520.17. The method used had the effect, therefore, of .reducing the value of the charitable bequest by over $550,-.000, because of its deprivation of an income, which, in itself,, .amounted to about $220,000. The additional tax amounted to $101,012.18. The difference between the $550,000 and the $220,000 did not go into the estate for any purposes of distribution. We think that what the commissioner should have done was to take either the actual income paid to the nephew and add it to the net estate or to have found a pres *840 ent value of this income as of the date of the death, thus increasing the taxable net estate by this amount.
The contemplated foundation was formed within a year from the testator’s death. The tax upon the value of the net estate was “ due one year after the decedent’s death.” The State statute allowed the executors a year within which to pay legacies. When the year ended the executors were in a position to make their return so as to include the deductible items allowed by section 403 to arrive at the net estate, which alone was taxable. It is proper, therefore, to limit the nephew’s interest by reason of the income to be paid him to the one year within which all the facts became known, and the right to possession of the corpus of the residuary estate became absolute. The plaintiffs are entitled to recover a part of the additional assessment imposed by the commissioner, but the facts stated in the stipulation are not sufficient to enable the court to determine the amount of the judgment. The case is remanded that the parties may stipulate the amount of the tax if $220,520.17 had been used by the commissioner instead of the figures he did use in making the additional assessment.
GRAi-iam, Judge; Hat, Judge; DowNey, Judge; and Booth, Judge, concur.